IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STC, Inc., <br><br> Debtor/Plaintiff, <br><br> vs. <br><br> GLOBAL TRAFFIC TECHNOLOGIES, LLC, COMMUNITY FIRST BANK OF THE HEARTLAND, RODNEY KRIS MORGAN and KM ENTERPRISES, INC., <br><br> Defendants. | Case No. 15-cv-0037-SMY <br><br> Adversary Proceeding   14-04039-LKG <br> Bankruptcy Petition       14-41014-LKG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Global Traffic Technologies' ("GTT") Motion to Withdraw the Reference (Doc. 1) in which GTT seeks to move Plaintiff STC's Bankruptcy Adversary Proceeding 14-4039 ("14-4039") from the United States Bankruptcy Court to the United States District Court for the Southern District of Illinois.  Defendants Rodney Kris Morgan ("Morgan") and KM Enterprises ("KME") filed a Response (Doc. 2) and stated they do not oppose the Motion.  Plaintiff and Debtor STC, Inc. filed an Objection and Memorandum in Response (Doc. 3).  Defendant Community First Bank of the Heartland did not respond to the Motion.  For the following reasons, the Court DENIES the Motion to Withdraw the Reference.

According to documents filed with the Bankruptcy Court, GTT was awarded a judgment for $5,052,118 following a jury verdict against STC, KME and Morgan for patent infringement which, when consolidated with subsequent enhanced damages and interest, amounts to more than $8.5 million.  See Southern District of Illinois Bankruptcy Court Proceeding No. 14-41014,

Order at Doc. 37, p. 2.  STC and Morgan have appealed the judgment in the Federal Circuit Court of Appeals, but a request to stay enforcement of the judgment was denied.  *Id*.

In the meantime, GTT initiated actions to enforce the judgment and asserted liens against STC and KME assets.  14-4039, Complaint at Doc. 1, p. 4-5.  Of particular relevance to the current Motion, STC has initiated adversarial action 14-4039 in the Bankruptcy Court to recover alleged proceeds for the sale of STC's goods under an agreement with Defendant KME.  STC alleges the proceeds are property of STC, payable to STC and only *held by* Defendant KME in an account with Defendant First Community Bank.  See 14-4039, Complaint at Doc. 1, p. 5.  GTT presumes the proceeds are actually property of KME and has asserted a citation lien on the proceeds.  14-4039, KME Response to Motion to Reconsider at Doc. 24, p. 2-4.  The Circuit Court for the Second Judicial Circuit in Jefferson County, Illinois ordered a stay of those citations after holding an emergency hearing.  *Id*.

KME claims no ownership of the proceeds and attempted to stipulate as to STC's ownership by way of an agreed motion for entry of a consent judgment in favor of STC.  14-4039, Agreed Motion for Order Approving Stipulation at Doc. 13.  The Bankruptcy Court entered judgment by consent in favor of STC and ordered the recovery of the proceeds held at Community First Bank.  14-4039, Order and Judgment by Consent at Doc. 15.  GTT filed a Motion to Reconsider asking the Bankruptcy Court to vacate the Order and Judgment on the basis that GTT did not receive proper notice and that the Order and Judgment adjudicates a property right without a hearing. 14-4039, Motion to Reconsider at Doc. 19.  In replying to KME's Response, GTT explained that the determination of ownership affects GTT's rights in that a judgment in favor of STC will shield the funds and disallow garnishment under GTT's lien. 14-4039, Reply of GTT at Doc. 27, p.4.

The Bankruptcy Court granted GTT's Motion to Reconsider, vacated its Judgment Order and set the matter for hearing. 14-4039, Minutes of Court at Doc. 29. Only GTT insists the proceeds are property of KME, and understandably so. If GTT prevails and a court determines that the proceeds are property of KME, GTT may collect on its lien.

As an initial matter, GTT denies STC's claim that 14-4039 is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O). See 14-4039, Answer and Affirmative Defenses at Doc. 8, p. 2, Response to Paragraph 4. STC asserts that "it is indisputable—and GTT does not attempt to dispute—that STC's claims are core claims." Objection and Response to Motion to Withdraw the Reference, Doc. 3, p. 7. However, STC has misinterpreted GTT's position. GTT does not address a "core" versus "non-core" issue. It argues instead that the claims are rooted in law that is wholly independent of federal bankruptcy law and therefore beyond the jurisdiction of the bankruptcy court. In particular, GTT argues only an Article III court can determine whether the property held by a third party is estate property—a question that involves private property rights which fall under state law.

Both GTT and STC rely on the Supreme Court's decision in *Stern v. Marshall*, which held that a bankruptcy judge lacks constitutional authority to enter a final judgment on a state-law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim (specifically in that case, for tortious interference of an *inter vivos* gift). 131 S. Ct. 2594 (2011). GTT argues that *Stern* establishes a claim having "some bearing" on a bankruptcy case is insufficient to establish a bankruptcy court's authority and that the hurdle to be crossed is "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." 131 S. Ct. at 2618. STC argues that GTT's reliance on *Stern* is misplaced. Rather than a general lack of authority to enter final judgment on state law claims,

3

STC cites *Stern* as limiting a bankruptcy court's jurisdiction only where the state law claims are wholly unrelated to bankruptcy matters. Because the claims of 14-4039 arise under federal bankruptcy law, STC argues the case should proceed with the Bankruptcy Court.

Both parties also cite to the Seventh Circuit Court's opinion in *Wellness International Network v. Sharif*, which building on *Stern*, held that a bankruptcy court lacked the authority to enter a final judgment on an "alter-ego" claim for which state law provides the rule of decision. 727 F.3d 751, 773-777 (7th Cir. 2013). GTT argues the claim in *Wellness International* is analogous because it is a determination of property ownership. STC distinguishes *Wellness International* because the claim in that case was based entirely on state law and was "wholly independent of federal bankruptcy law." Objection and Response to Motion to Withdraw the Reference, Doc. 3, p. 6, quoting *Wellness International*, 727 F.3d at 775. STC points instead to Section 541 of the Bankruptcy Code, 11 U.S.C. § 541, which defines and creates the property of a bankruptcy estate, and Section 542, which empowers a debtor-in-possession to compel parties in possession of property of debtor's estate to turn over the property.

The jurisdiction of Article I bankruptcy courts is more limited than that of Article III district courts. Bankruptcy courts have statutory authority to issue final orders and judgments only in "*core proceedings arising under* title 11, or *arising in* a case under title 11." 28 U.S.C. § 157(b)(1) (emphasis added). The statute contains a non-exhaustive list of "core proceedings" in which the bankruptcy court may enter a final order or judgment. 28 U.S.C. § 157(b)(2). By contrast, when the bankruptcy court determines, under Section 157(b)(3), that a claim is only "related to" the bankruptcy proceedings, the court may not enter final judgment but "shall submit proposed findings of fact and conclusions of law to the district court" for *de novo* review and

final entry of final judgment. 28 U.S.C. § 157(c)(1). The proceedings in this latter category are known as "noncore" proceedings.

The United States Supreme Court summarized the approach to "core" versus "non-core" claims as follows:

> Put simply, if a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.

*Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2172 (2014).

GTT does not attempt to distinguish the claims as "non-core." Rather, it relies on *Stern* and *Wellness International* in arguing that, because the claims represent private rights and property ownership, they are rooted in state property law rather than any provision of the Bankruptcy Code and therefore outside of the constitutional authority of the Bankruptcy Judge.

The issue to be first addressed, therefore, is the root of the claims stated in 14-4039. If they are wholly independent of federal bankruptcy law and rooted entirely in state law, the Bankruptcy Court has no jurisdiction and this Court must withdraw the reference.

STC brings three claims in 14-4039: Count I claims the proceeds are not property of KME and are held for the benefit of STC. Thus, the proceeds are part of the bankruptcy estate, a turnover of the proceeds to STC is required and any lien asserted against the proceeds is subject to avoidance. In Count II, STC claims it is entitled to an equitable lien that is superior to all other liens on the proceeds. Count III claims that, upon avoidance of GTT's liens on the proceeds as preferences, GTT has no valid, unavoidable lien against the proceeds.

Section 541(a) of the Bankruptcy Code creates the bankruptcy estate and defines what shall be considered the property of the estate, "wherever located and by whomever held." 11

U.S.C. § 541(a). Section 541 contains a detailed list of what property comprises the estate (§ 541(a)) and what property is excluded (§ 541(b)). Proceeds, product and profits of or from property of the estate are listed as property of the estate under § 541(a)(6).

At first glance, an issue of whether proceeds held by a third party are or are not included in a debtor's bankruptcy estate is certainly a matter that arises under federal bankruptcy law— Congress devoted an entire section to the matter. Looking to courts that have addressed similar claims, unpaid proceeds earned pursuant to a contract (a right to receive payment) represent an equitable interest in property and become "property of the estate" on debtor's filing for bankruptcy. *Ohio Farmers Ins. Co. v. Hughes-Bechtol, Inc.*, 249 B.R. 735, 745 (S.D. Ohio, 1998), affirmed in part by *In re Hughes-Bechtol, Inc.*, 225 F.3d 659 (unreported, 6th Cir. 2000).

Based on the above example and the language of Section 541 of the Bankruptcy Code, STC's claim in Count I is an attempt to define property as part of the bankruptcy estate regardless of the fact that it is held by a third party. Without defining the proceeding as core or non-core, the Court finds that the claim in Count I is, at the very least, "related to" federal bankruptcy law and not wholly independent of the Bankruptcy Code. Because the remaining counts of 14-4039 stem from a determination that the proceeds are, in fact, part of the bankruptcy estate, the Court will not address them at this time.

Finding that 14-4039 is "related to" the Bankruptcy Code does not mandate that the action must proceed before the bankruptcy court. This Court may nonetheless withdraw the reference if certain conditions are met. Section 157(d) *requires* a district court to withdraw the reference— "mandatory withdrawal"— only in contexts where (1) substantial and material conflicts may exist between non-bankruptcy federal laws and Title 11 or (2) resolution of the matter will require a bankruptcy judge to interpret non-bankruptcy federal law. *In re Keene*, 182

B.R. 379, 382 (S.D.N.Y. 1995). "Mandatory withdrawal is a fact specific determination, and thus necessarily involves analysis in light of the circumstances involved in each case." *Id*. After a review of the docket and all facts thus far alleged by the parties, the Court finds no grounds for mandatory withdrawal.

The portion of Section 157(d) that allows for *permissive* withdrawal of a reference to bankruptcy reflects "a presumption that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy." *In re Conseco Finance Corp.*, 324 B.R. 50, 53 (N.D. Ill. 2005), quoting *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900 (Bankr. E.D.Mich. 1985). A district court's withdrawal of the reference of a case which will adjudicate the rights of the debtors and creditors… must be based on a sound, articulated foundation," and "the district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id*, quoting *Holland Am. Ins. Co. v. Roy*, 777 F.2d 992 (5th Cir. 1985). In other words, this Court must have a good reason for withdrawing 14-4039.

A district court faced with a motion to withdraw "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Id*, quoting *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993). A party's refusal to consent to final adjudication by a bankruptcy court and the assertion of a Seventh Amendment right to a jury trial, although seemingly indicative of ultimate adjudication by the district court, is insufficient for permissive withdrawal. *In re Enron Corp.*, 295 B.R. 21, 27 (S.D.N.Y. 2003).

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship

> between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

*In re Enron Corp.*, 295 B.R. 21, 28 (S.D.N.Y. 2003), quoting *In re Kenai Corp.*, 136 B.R. 59 (S.D.N.Y. 1992).

While GTT would have the Court believe the claims presented in 14-4039 are beyond the bankruptcy court's jurisdiction because the claims relate to GTT's rights over KME property, the claims in fact arise under a need to define STC's bankruptcy estate under 11 U.S.C. § 541(a). This is a claim that arises directly under the Bankruptcy Code. It is not necessary, however, for this Court to define the proceeding as core or non-core at this time. In either event, withdrawal is not yet warranted.

Where a proceeding is in a preliminary stage, the bankruptcy judge is presiding over other actions that rely on the same factual and legal grounds and discovery is yet to be conducted, the bankruptcy judge is in a better position to preside over the proceeding efficiently, and permissive withdrawal of the reference is not warranted. *Id*, quoting *In re Enron Power*, 2003 WL 68036, at 11 (S.D.N.Y. January 8, 2003). Here, the proceedings are in the early stages and discovery has not progressed. The Bankruptcy Judge is presiding over STC's bankruptcy petition and another related adversary proceeding and so is familiar with the facts of this case. If this Court did withdraw the reference, the case would be referred to a magistrate judge for discovery purposes, requiring yet another new phase of familiarization with the facts of this case. It is therefore not an efficient use of judicial resources to withdraw the reference at this time. If it appears a trial by jury is warranted as the case proceeds with the bankruptcy judge, GTT may file a renewed motion to withdraw the reference.

In conclusion, the claims presented in 14-4039 are not wholly independent of federal bankruptcy law, nor do the conditions for mandatory withdrawal apply. While this Court is *permitted* to withdraw the reference, STC is correct that the Bankruptcy Court has jurisdiction to hear these claims. If the Bankruptcy Judge determines that the matter is a non-core proceeding and GTT does not consent to final adjudication there, GTT may file a renewed motion to withdraw the reference. At such time, this Court will preside over a jury trial or enter final judgment after a *de novo* review of the Bankruptcy Judge's recommendation on findings of fact and conclusions of law. Accordingly, the case shall proceed in the Bankruptcy Court and is dismissed from this Court without prejudice.

**IT IS SO ORDERED.**

**DATE: March 4, 2015**                                      **s/   Staci M. Yandle**
                                                             **STACI M. YANDLE**
                                                             **DISTRICT JUDGE**